UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Kenneth D. Laub,<br><br>　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 23-10689 (JPM) |

**MEMORANDUM OPINION AND ORDER ON MOTION TO
DISMISS AND OBJECTION TO PROOF OF CLAIM NO. 1 OF WILMINGTON
SAVINGS FUND SOCIETY, FSB AS TRUSTEE OF WV 2017-1 GRANTOR TRUST**

*A P P E A R A N C E S:*

**LAW OFFICES OF GABRIEL DEL VIRGINIA**
*Counsel for the Debtor*
30 Wall Street, 12th Floor
New York, New York 10005
By:　　Gabriel Del Virginia, Esq.

**ROACH & LIN, P.C.**
*Counsel for Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust*
6851 Jericho Turnpike, Suite 185
Syosset, New York 11791
By:　　Jacqueline M. Kelly, Esq.

**KRISS & FEUERSTEIN, LLP**
*Counsel for 163 East 64th Street LLC*
360 Lexington Avenue, Suite 1200
New York, NY 10017
By:　　Stuart L. Kossar, Esq.

**WILLIAM K. HARRINGTON**
*United States Trustee, Region 2*
One Bowling Green, Room 534
New York, NY 10004
By:　　Shara C. Cornell, Esq.

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

## I. INTRODUCTION

Pending before the Court is Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust's ("**Wilmington**"), *Motion to Dismiss and Memorandum of Law* filed on November 21, 2023 (the "**Motion to Dismiss**"). (Docket No. 35-1).[1] The Motion to Dismiss is supported by the *Declaration of Jacqueline M. Kelly in Support of Wilmington's Motion to Dismiss Chapter 11 Case* (the "**Kelly MTD Declaration**"). (Docket No. 35-2).

On January 4, 2024, the Debtor filed the *Response and Answer to Motion of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust to Dismiss Chapter 11 Case* (the "**MTD Response**"). (Docket No. 40). The MTD Response is supported by: (i) the *Declaration of Debtor, Kenneth D. Laub, in Support of his Response/Opposition to Motion of Wilmington Savings Fund Society, FSB as Trustee of WB 2017-1 Grantor Trust to Dismiss Chapter 11 Case* (the "**Laub MTD Declaration**") (Docket No. 40-1); (ii) the *Declaration of David Boies, Esq.* (the "**Boies Declaration**") (Docket No. 40-2); (iii) the *Declaration of Y. David Scharf, Esq. In Support of Debtor's Opposition and Answer to Motion to Dismiss* (the "**Scharf Declaration**") (Docket No. 40-3); (iv) the *Declaration of Derek Wolman, Esq.* (the "**Wolman Declaration**") (Docket No. 40-4); (v) the *Declaration of Eddie Shapiro in Support of Debtor's Opposition and Answer to Motion to Dismiss* (the "**Shapiro Declaration**") (Docket No. 40-5);

---

[1] References to "Docket No. __" are to filings entered on the docket in *Kenneth D. Laub*, No. 23-10689 (JPM) (Bankr. S.D.N.Y. May 2, 2023). References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York. References to "FRCP __" are to the Federal Rules of Civil Procedure. References to "POC No. __" are to Proofs of Claim entered on the claims register in the above-captioned case.

2

and (vi) the *Declaration of Loy Carlos in Support of Debtor's Opposition and Answer to Motion to Dismiss* (the "**Carlos Declaration**") (Docket No. 40-6).

On January 8, 2024, Wilmington filed the *Reply in Further Support of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust's Motion to Dismiss and Memorandum of Law* (the "**MTD Reply**") (Docket No. 42).

Also pending before the Court is the Debtor's *Objection to Proof of Claim No. 1 of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust* (the "**Claim Objection**"). (Docket No. 52). The Claim Objection is supported by the *Declaration of Debtor, Kenneth D. Laub, in Support of his Objection to Claim No. 1 of Wilmington Savings Fund Society, FSB as Trustee of WB 2017-1 Grantor Trust.* (the "**Laub Claim Objection Declaration**"). (Docket No. 52-1).

On May 1, 2024, Wilmington filed its *Response to Debtor's Objection to Claim No. 1* (the "**Claim Objection Response**"). (Docket No. 54). The Claim Objection Response is supported by the: (i) *Declaration of Jacqueline Kelly in Response to Debtor's Objection to the Claim of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust* (the "**Kelly Claim Declaration**") (Docket No. 54-1); (ii) *Declaration of Nicole Depascale in Response to Debtor's Objection to the Claim of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust* (the "**Depascale Declaration**") (Docket No. 54-2); and (iii) *Declaration of Chris Lechtanski in Response to Debtor's Objection to the Claim of Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust* (the "**Lechtanski Declaration**") (Docket No. 54-3).

On May 5, 2024, the Debtor filed the *Reply to Answer of Wilmington Savings Fund Society, FSB as trustee of WV 2017-1 Grantor Trust to Objection to Proof of Claim No. 1 Of*

3

*Wilmington Savings Fund Society, FSB as Trustee of WV 2017-1 Grantor Trust* (the "**Claim Objection Reply**"). (Docket No. 58).

The Court held a hearing on the Motion to Dismiss on January 11, 2024 (the "**January 11 Hearing**" and the recording thereof, the "**January 11 Hearing Recording**") where it heard arguments of counsel. The Court also held continued hearings on April 4, 2024, May 7, 2024, and June 10, 2024 (the "**June 10 Hearing**" and the recording thereof, the "**June 10 Hearing Recording**"), where the Court received status updates on the Debtor's ongoing efforts to sell the property, and arguments regarding the Claim Objection. Following the June 10 Hearing, the Court took these matters under advisement. The Court has reviewed and considered the Motion to Dismiss, the MTD Response, the MTD Reply, the Claim Objection, the Claim Objection Response, the Claim Objection Reply, the declarations, the arguments of counsel at the hearings, and the record as a whole.

## II. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (B).

## III. BACKGROUND

The Debtor is the owner of a single-family townhome located at 163 East 64th Street, New York, New York (the "**Property**"). (Motion to Dismiss at 4). The Debtor has owned the Property for 37 years, having purchased the Property in June 1986. (Laub MTD Declaration at ¶ 1). The Debtor has marketed the Property for sale on and off since 2003 through twelve brokers but has not successfully sold the Property. (MTD Reply at ¶ 4).

On April 15, 2005, the Debtor executed a mortgage note secured by the Property (the "**Note**") "in the amount of $9,000,000.00 in favor of Mortgage Electronic Registration Systems,

4

Inc., as nominee for Chevy Chase Bank, FSB, its successors and assigns." (Motion to Dismiss at 5).  The Note was assigned to Capital One, N.A. ("**Capital One**") on June 16, 2017.  (*Id.*)

On October 19, 2017, Capital One commenced a foreclosure proceeding (the "**Foreclosure Proceeding**"), as the Debtor had been in default since December 1, 2016.  (*Id.*)  Capital One subsequently assigned the Note to Wilmington.  (*Id.*)

On October 11, 2022, Wilmington obtained a Judgment of Foreclosure (the "**Judgment of Foreclosure**") "in the sum of $10,653,559.26 plus interest." (*Id.*)  Thereafter, a sale of the Property was scheduled for May 3, 2023, at 2:15 p.m., but the Debtor filed the instant Chapter 11 case the day before the sale.  (*Id*; Docket No. 1).

On June 28, 2023, Wilmington filed Proof of Claim No. 1 (the "**Wilmington Claim**").  (Claim No. 1).  Wilmington attached various documents to the Wilmington Claim, including a copy of the Note.  (*Id.*)

According to the Debtor's schedules, in addition to Wilmington's secured claim in the amount of $10,904,179.09, the Property is encumbered by a mortgage held by 163 East 64th Street, LLC in the amount of $5,400,000.00 and a tax lien in favor of the New York City Law Department in the amount of $214,740.04.  (Motion to Dismiss at 6 (citing Docket No. 22 (the Debtor's schedules))).  Thus, secured claims against the Property total approximately $16,518,919.13 according to the Debtor's schedules.  (*Id.*)

On November 21, 2023, Wilmington filed the Motion to Dismiss based on substantial and continuing loss to the estate with no reasonable likelihood of reorganization pursuant to 11 U.S.C. § 1112(b)(4)(A), as well as seeking dismissal for a bad faith filing.  (*See generally* Motion to Dismiss).

5

On April 2, 2024, the Debtor filed the Claim Objection. The basis of the Claim Objection is that the Debtor was contacted on February 13, 2024, by an individual named Kranthi Vallabhaneni ("**Mr. Vallabhaneni**"). (Claim Objection at ¶ 11). Mr. Vallabhaneni allegedly advised the Debtor that he wished to offer $16,000,000.00 for the Property, and that he had purchased the Judgment of Foreclosure from Wilmington in July of 2023. (*Id.*). However, Mr. Vallabhaneni did not submit a formal bid for the property. (Claim Objection Reply at 4-6). The Debtor has not received any formal offers at any price during the pendency of the case. (Claim Objection at ¶ 11).

## IV. LEGAL STANDARDS AND ANALYSIS

Preliminarily, because the Claim Objection alleges that Wilmington is no longer a creditor of the Debtor, the Court will first consider the Claim Objection. (Claim Objection at ¶ 13 (claiming that if the Debtor prevails on the Claim Objection, "Wilmington holds no claim, and its filed Claim No. 1 should be reduced to $0.00")).

### A. THE PROOF OF CLAIM WAS NOT REBUTTED BY SUFFICIENT EVIDENCE

Section 502(a) of the Bankruptcy Code establishes that any claim for which a timely proof of claim has been filed is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). If an objection is filed to a proof of claim, the Court, upon notice and a hearing, must determine the validity and/or the proper amount of the asserted claim. *See* 11 U.S.C. § 502(b). If the claim against the Debtor is based on a writing, the proof of such claim must include a copy of such writing. *See* 11 U.S.C. § 501(c). As per Bankruptcy Rule 3001(f), a proof of claim that complies with the requirements of Bankruptcy Rule 3001 and Official Form 410 "shall constitute *prima facie* evidence of the validity and amount of the claim." Bankruptcy Rule 3001(f). However, if an objection refuting at least one of the claim's essential elements has been asserted,

6

the burden then shifts to the claimant to prove that the claim should be allowed. *In re Rockefeller Ctr. Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y.) (citations omitted); *In re Live Primary*, LLC, 626 B.R. 171, 188 (Bankr. S.D.N.Y. 2021) (holding that "the party objecting to [such] a claim has the initial burden of going forward with evidence to refute the claim even though the creditor retains the ultimate burden of persuasion with regard to the validity of the claim"); *see also In re Roman Cath. Diocese of Rockville Ctr., New York,* 651 B.R. 146, 157 (Bankr. S.D.N.Y. 2023) (holding that "[b]y producing evidence equal in force to the *prima facie* case, an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to prove by a preponderance of the evidence that under applicable law the claim should be allowed" (internal citations and quotations omitted)).

Here, Wilmington's proof of claim is based upon a writing (the Note), which Wilmington attached to its proof of claim. (*See* POC No. 1). Accordingly, at filing, Wilmington's proof of claim was entitled to *prima facie* validity pursuant to Bankruptcy Rule 3001(f). *See* Bankruptcy Rule 3001(f).

Subsequently, the Debtor filed the Claim Objection, alleging that Wilmington holds no claim because Mr. Vallabhaneni had purchased Wilmington's Judgment of Foreclosure as of July 2023. (Claim Objection at ¶ 11). To support this assertion, the Debtor supplied a sworn declaration signed by the Debtor detailing his account of his interactions with Mr. Vallabhaneni. (*See* Laub Claim Objection Declaration).

In the Claim Objection Response, Wilmington provided detailed additional evidence to support its claim, including: (i) a declaration from a paralegal for counsel for Wilmington stating that the original Note and related documents remained in a locked safe at all times between November 9, 2018 through March 6, 2024, when they were sent to Carrington Mortgage (the

7

servicer for Wilmington) (Depascale Declaration at ¶¶ 5–9); (ii) a declaration from the Assistant Vice President of Default Operation at Carrington, detailing the fact that Carrington received the original Note from counsel for Wilmington on March 7, 2024 and that it has remained in Carrington's possession ever since (Lechtanski at ¶¶ 4–6); and (iii) various documentation supporting these claims including FedEx tracking slips showing that the Note was received by Carrington (Docket No. 54-6).

The only additional evidence supplied by the Debtor in the Claim Objection Reply is a subpoena addressed to Mr. Vallabhaneni. (*See* Claim Objection Reply at 4–20).

Here, the Court finds that the Debtor has not met his burden to supply "evidence equal in force to the *prima facie* case," sufficient to rebut the presumptive legal validity of the Wilmington Claim. *See In re Roman Cath. Diocese of Rockville Ctr., New York,* 651 B.R. 146, 157 (Bankr. S.D.N.Y. 2023). Indeed, aside from the Debtor's own assertions in the Laub Claim Objection Declaration, the Debtor provided no additional evidence to rebut any of the evidence provided by Wilmington. For instance, while the Debtor apparently subpoenaed Mr. Vallabhaneni, he never appeared at any of the Hearings in this matter. (*See* Claim Objection Reply at 4–20). Moreover, at the June 10 Hearing, counsel for the Debtor stated that he had deposed Mr. Vallabhaneni (without opposing counsel being notified of, or being present for, the deposition), but that Mr. Vallabhaneni failed to provide any evidence that he had purchased the Note. (*See* June 10 Hearing Recording at 38:50–39:30 (where counsel for the Debtor states that "we undertook the deposition . . . of the purported [N]ote purchaser . . . and after an hour or so of testimony he did not produce either proof of the [N]ote or testify as to his ownership of the [N]ote despite his previous representation to [counsel for the Debtor] and Mr. Laub" that he had purchased the Note from Wilmington)).

8

For these reasons, the Court finds that the Debtor has failed to present sufficient evidence to rebut the *prima facie* validity of the Wilmington Claim. Accordingly, the Claim Objection is OVERRULED.

## B. THE MOTION TO DISMISS

Under Section 1112(b), a court can dismiss a Chapter 11 case or convert it to a case under Chapter 7 "for cause" so long as it is in the best interest of both the creditors and the estate. *See* 11 U.S.C. § 1112(b). Subsection (b)(4) contains sixteen enumerated examples of cause to convert or dismiss a Chapter 11 case; this list, however, is "not exhaustive" and courts are free to consider other factors. *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010).

### 1. Cause Exists to Dismiss this case under 1112(b)(4)(A)

#### a. Substantial or Continuing Loss & Lack of Rehabilitation.

The first argument raised by Wilmington is that cause exists to convert or dismiss the case pursuant to 11 U.S.C. § 1112(b)(4)(A), due to a substantial or continuing loss to or diminution of the estate and because the Debtor lacks reasonable likelihood of rehabilitation.[2] (Motion to Dismiss at 7–9). In support of this argument, Wilmington asserts that there is a

---

[2] Other forms of enumerated cause under Section 1112(b) of the Bankruptcy Code include: "(B) gross mismanagement of the estate; (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public; (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors; (E) failure to comply with an order of the court; (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor; (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any); (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court; (K) failure to pay any fees or charges required under chapter 123 of title 28; (L) revocation of an order of confirmation under section 1144; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition." 11 U.S.C. § 1112(b)(4)(B)–(P).

9

substantial and continuing loss to the estate because the Debtor's only source of income is social security, which is insufficient to pay his expenses according to the schedules. (*Id.* at 7). Moreover, Wilmington asserts that there is no likelihood of rehabilitation because the Debtor intends to liquidate by selling the Property, which is the Debtor's principal asset, and because the property is fully collateralized. (*Id.* at 7).

In the MTD Response, the Debtor generally asserts that there is a likelihood of reorganization because the Debtor intends to sell the Property and has engaged in a good faith effort to sell it. (MTD Response ¶¶ 8–16).

In the MTD Reply, Wilmington asserts that cause exists to dismiss the case because: (i) the Debtor has been trying to sell the property for years with no success (MTD Reply at ¶ 2); (ii) Wilmington is not obligated to accept less than what it is owed in any sale (*id.* at ¶ 2); (iii) the Debtor is unable to meet his ongoing monthly expenses (*id.* at ¶ 7); (iv) there are no unsecured claims filed in the case and the bar date has passed (*id.* at ¶ 10); and (v) dismissal of the case is in the best interest of creditors (*id.* at ¶ 12).

The Court agrees with Wilmington. As set forth above, the Debtor's only source of income is social security, and the Debtor's schedules show that his expenses are nearly three times the amount of his income. (Docket No. 22). While the Debtor has retained a real estate broker and has been attempting to sell the property (*See* Docket No. 37), the Debtor has been unable to find a buyer at a price sufficient to pay the secured claims in full, or to obtain the consent of the secured creditors to a lower price despite having more than a year to do so.[3] (*See* Docket No. 1). The Court also notes that the Debtor's exclusive listing agreement with his real

---

[3] Moreover, as noted *supra*, section III, the Debtor has marketed the Property for sale on and off since 2003 through twelve brokers but has not successfully sold the Property. (MTD Reply at ¶ 4).

estate broker expired on April 30, 2024, and no deal has been executed.  (*See* Docket No. 34 at ¶ 17(a)).

Additionally, as stated by counsel for 163 East 64th Street, LLC (the second priority lienholder) at the January 11 Hearing in this matter, no secured creditors have been paid in this case.  (January 11 Hearing Recording at 11:30–11:45).  Accordingly, any value that would remain in the estate for the benefit of other creditors is being eroded each month as payments are missed.  Moreover, even if Wilmington's claim had been sold to Mr. Vallabhaneni as alleged in the Claim Objection (which the Court has overruled), such sale would not explain why adequate protection payments have not been made to other secured creditors, such as 163 East 64th Street LLC, who remain unpaid since this case was filed.

For these reasons, the Court finds that cause exists under Section 1112(b)(4)(A) to convert or dismiss this case for continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

### b. **Bad faith.**

Wilmington's second argument in support of its Motion to dismiss is that the case should be dismissed for bad faith. Given the above findings as to Wilmington's first argument, the Court will not analyze this argument at length.  However, the Court generally disagrees with Wilmington, given that it appears that the Debtor has been attempting in good faith to sell the Property.

### 2. **Dismissal is in the best interest of the creditors and the estate.**

Once cause is established, the Court must determine whether to convert or dismiss the case, whichever is in the best interest of the creditors and the estate.  *See* 11 U.S.C. § 1112(b).  Here, Wilmington requests dismissal, and 164 E. 64th Street, LLC, agrees.  (Motion at 11; January 11 Hearing Recording at 11:00–12:30).  Additionally, it appears to the Court that the

11

Property is fully encumbered, and that any eventual sale is unlikely to yield a recovery for other creditors. (Motion to Dismiss at 6). Accordingly, the Court finds that dismissal is in the best of creditors and the estate.

## V.    CONCLUSION

For the foregoing reasons, the Claim Objection is OVERRULED and the Motion to Dismiss is GRANTED.

**IT IS SO ORDERED.**

Dated: June 14, 2024
New York, New York

S/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE
